IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 108-151 |
| | ) | |
| ELIJAH DEXTER RICHARDSON | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, the government has accused Defendant Elijah Dexter Richardson of possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (Doc. no. 1). The matter is now before the Court on Defendant's motion to suppress the drugs obtained as a result of a search of Defendant's automobile on October 10, 2008. (Doc. no. 25). The government opposes this motion. (Doc. no. 37). The Court held an evidentiary hearing on February 3, 2009, during which the Court heard testimony from Captain Todd Dent ("Capt. Dent") of the Taliaferro County Sheriff's Office ("TCSO") and viewed a recording of the events resulting in Defendant's arrest. For the reasons developed more fully herein, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

### I. FACTS

In the early morning hours of October 10, 2008, Capt. Dent was on patrol and stationed at mile marker 148 in the median of Interstate 20 ("I-20"). Capt. Dent's canine, Diva, was in the car, but no other officer was on patrol with him. When Capt. Dent heard

a set of tires hit the ruts, or "speed bumps," in the emergency lane of I-20 East, he began to follow a silver Ford Fusion driven by Defendant. According to Capt. Dent, there were no other vehicles traveling in the eastbound lane as Defendant passed him. As he began following the vehicle, he activated the video camera inside the patrol car and observed that one of the registration tags appeared to be missing from the license plate. He also observed the vehicle driven by Defendant "ride" the white line bordering the emergency lane. He followed the car for approximately four miles, and after his dispatcher ran a license plate check, Capt. Dent activated his blue lights and effected a stop of the vehicle.

Capt. Dent exited the patrol car and approached the passenger side of the vehicle, where he smelled marijuana and observed marijuana residue in the car. Co-defendant Marcus Jamal Broughton ("Mr. Broughton") was the passenger in the car. Capt. Dent then approached the driver side of the car and asked the individual he identified as Defendant Richardson for his license. He informed Defendant that one of the registration tags on the vehicle was missing and that he had crossed into the emergency lane of I-20 East. Defendant exited the vehicle to observe the missing tag and informed Capt. Dent that the vehicle had been rented and that he was authorized to drive the car. However, an examination of the relevant documents revealed that Defendant's name was not on the rental agreement, nor on any supplementary documentation.[1] Moreover, Capt. Dent testified that the car was overdue to be returned. Capt. Dent then proceeded to question Defendant and Mr. Broughton regarding their trip. At this time, Mr. Broughton remained in the passenger seat of the Ford

---

[1] The rental agreement showed that the vehicle had been rented by a Cherril Bennett in Charleston, South Carolina. Ms. Bennett was not in the car at the time of the stop.

Fusion, while Defendant was seated on the hood of the patrol car. Defendant informed Capt. Dent that they were returning from Chattanooga, Tennessee, while Mr. Broughton informed Capt. Dent that they were returning from Atlanta, Georgia, which according to Capt. Dent is a "known drug source" city. Following his conversation with Mr. Broughton, Capt. Dent again asked Defendant where they were coming from, and Defendant repeated his previous answer that he was coming from Chattanooga.

Capt. Dent then had his dispatcher run a license check on both Defendant and Mr. Broughton. While Capt. Dent was waiting for the license check to come back from his dispatcher, Diva performed a free air sniff of the vehicle.[2] Mr. Broughton remained in the car during the free air sniff, while Defendant stood on the driver's side of the patrol car. Diva alerted at the front and rear passenger doors, as well as the driver's side door, by jumping up on the car and scratching at the doors. Defendant and Mr. Broughton were then detained in the back of the patrol car while Capt. Dent searched the vehicle. Capt. Dent testified that he made the decision to detain the men because they were much larger individuals, and because he was the only officer on the scene. Moreover, Capt. Dent stated that Defendant was moving around and talking to Mr. Broughton, despite instructions not to do so. However, Capt. Dent did concede that Defendant followed most of his instructions and never attempted to flee during the entire encounter.

---

[2] At the hearing, Capt. Dent testified that he has been a canine officer with the TCSO for seven years, and Diva is trained in narcotics, apprehension, and tracking. Both Capt. Dent and Diva were certified when the stop in question took place on October 10, 2008.

In the backseat of the Ford Fusion, Capt. Dent found a shoe box containing what was determined to be three kilograms of cocaine.³ Defendant and Mr. Broughton were then placed under arrest for trafficking a controlled substance, and Capt. Dent later issued citations to Defendant for the missing tag decal and failure to maintain his lane. A total of sixteen minutes elapsed from the time Capt. Dent began following the vehicle until Defendant and Mr. Broughton were placed under arrest.

## II. DISCUSSION

### A. Legality of the Stop

Defendant first argues that the drugs found in the backseat of the vehicle should be suppressed because no traffic violation occurred, and thus the stop was pretextual. In general, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). Moreover, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id. at 813.

In the instant case, the evidence presented at the hearing demonstrates that probable cause existed for the traffic stop. O.C.G.A. § 40-6-48 states, in pertinent part, that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." O.C.G.A. § 40-6-48(1). Capt. Dent testified that while he was stationed at mile marker 148 on I-20, he heard the tires of the Ford Fusion driven by Defendant hit the ruts in

---

³This same shoe box was observed between the passenger's feet when Capt. Dent first approached the vehicle.

4

the emergency lane of the interstate, and there were no other cars near Defendant's vehicle at the time. Capt. Dent also testified that once he began following the vehicle, he observed it "riding" the white line bordering the emergency lane. Defendant correctly notes that the video recording does not depict the first incident and submits an affidavit stating that he did not fail to maintain his lane. (Doc. no. 25, Ex. A). Thus, whether Defendant failed to maintain his lane prior to the activation of the video camera is a question of credibility. Defendant did not testify at the evidentiary hearing, and the statements made in the affidavit were not subject to cross-examination. Thus, the only testimony the Court has before it is Capt. Dent's statements that he heard tires of the vehicle driven by Defendant hit the ruts in the emergency lane and that no other cars were near the vehicle at that time. It is undisputed that Capt. Dent was in a position to hear Defendant crossing into the emergency lane and observe the absence of other cars on I-20 East. He was also in a position to observe the vehicle driven by Defendant "ride" the white line after he began following it. Accordingly, the Court credits the testimony of Capt. Dent and finds that he had probable cause to believe that Defendant had failed to maintain his lane in violation of O.C.G.A. § 40-6-48.[4] Having determined that there existed probable cause to believe that a traffic violation occurred, the Court easily concludes that Capt. Dent did not act improperly in stopping the vehicle driven

---

[4] Defendant has also argued that, Capt. Dent had no probable cause to effect a stop of the vehicle because the vehicle did not display the month of registration since the rental car was registered in South Carolina, which Defendant contends only requires the year of registration to be displayed. A review of the relevant South Carolina statute appears to require separate month and year stickers to be displayed on vehicles registered in South Carolina. See S.C. Code Ann. § 56-2-2740. Thus, Defendant's argument on this point appears to be without merit. However, the Court need not make a definitive finding on this matter, as it determines that Capt. Dent had probable cause to stop the vehicle based on Defendant's failure to maintain his lane on two separate occasions.

5

by Defendant. See Whren, 517 U.S. at 810; see also Rayo-Leon v. State, 635 S.E.2d 368, 370 (Ga. Ct. App. 2006) (finding that police officer was justified in effecting a traffic stop where he had observed the defendant fail to maintain his lane by twice crossing traffic lines, in violation of O.C.G.A. § 40-6-48).

**B.     Duration and Scope of the Stop**

Defendant next contends that he was illegally detained following the stop of the vehicle. Under Terry v. Ohio, 392 U.S. 1, 30 (1968), the police may briefly stop and detain persons in order to investigate a reasonable suspicion that those persons are involved in criminal activity, even in the absence of probable cause to believe that a crime has been committed. United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990). Reasonable suspicion is determined from the totality of the circumstances, United States v. Sokolow, 490 U.S. 1, 8 (1989), and requires that the officer point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the investigatory detention. Terry, 392 U.S. at 21; see also United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir.1999). Although the "reasonable suspicion" required for a Terry stop is less stringent than the requirement for probable cause, United States v. Mikell, 102 F.3d 470, 475 (11th Cir. 1996), "reasonable suspicion" requires that an officer have more than a "hunch" that criminal conduct is afoot based on unparticularized facts. The officer must be able to articulate some minimal, objective justification for the investigatory detention. United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004); United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989).

The reasonableness of an investigatory detention turns on two inquiries: (1) whether the stop was reasonable at its inception, and (2) whether the stop became unreasonable in its scope or duration. See Acosta, 363 F.3d at 1145; see also United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). As already discussed above, the stop of the vehicle driven by Defendant was not unreasonable at its inception because Capt. Dent possessed probable cause to believe that a traffic violation had occurred. Nor did the search become unreasonable in its scope or duration. When Capt. Dent first approached the car, he smelled marijuana and observed marijuana residue. Defendant and Mr. Broughton also gave conflicting stories about where they had come from: Defendant stated that they were coming from Chattanooga, Tennessee, while Mr. Broughton indicated that they were returning from Atlanta, Georgia, which Capt. Dent identified as a "known drug source," based on his training and experience as a law enforcement officer. Moreover, Defendant was not listed on the rental agreement or any supplementary documentation as an authorized driver, and the car was several hours overdue. Only then did Capt. Dent have Diva perform the free air sniff of the vehicle, and the canine's positive responses gave Capt. Dent probable cause to search the car.[5] As there were specific, articulable facts raising a reasonable suspicion of criminal activity, it cannot be said that the scope of the stop became unreasonable.

---

[5] Defendant does not contest the existence of probable cause to search the car. Indeed, it is well-settled in the Eleventh Circuit that a drug dog's positive responses are sufficient to establish probable cause. United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1998) (*per curiam*); United States v. Banks, 3 F.3d 399, 402 (11th Cir. 1993) (*per curiam*); see also United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003) (*per curiam*) (citing Banks for proposition that positive responses by drug dog establishes probable cause for search).

In addition, Capt. Dent diligently pursued his investigation designed to quickly dispel or confirm his reasonably articulated suspicion that criminal activity may have been afoot. The Supreme Court has specifically refused to set a *per se* time limit on reasonable suspicion stops. See United States v. Place, 462 U.S. 696, 709 n.10 (1983). Instead, the Court requires an examination of whether law enforcement officials diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. See United States v. Sharpe, 470 U.S. 675, 686 (1985). Using this case by case approach, the courts have allowed Terry-stops to last as long as seventy-five minutes. See United States v. Gil, 204 F.3d 1347, 1350-51 (11th Cir. 2000); see also United States v. Cooper, 873 F.2d 269, 275 (11th Cir. 1989) (affirming a thirty-five minute reasonable suspicion detention); United States v. Hardy, 855 F.2d 753, 761 (11th Cir. 1988) (affirming Terry-stop lasting almost fifty minutes).

In the instant case, a review of the recording of the events leading to Defendant's arrest reveals that less than 16 minutes elapsed between the time Capt. Dent began following Defendant and the time the cocaine was found. Less than two minutes into the recording, Capt. Dent had effectuated the stop of the vehicle, and fifteen seconds later he approached the vehicle, at which time he smelled the odor of marijuana and observed marijuana residue. Approximately five and a half minutes into the video, Capt. Dent had received the contradictory answers from Defendant and Mr. Broughton regarding their original destination. Capt. Dent called the license check into his dispatcher only two minutes later, and Diva began the free air sniff ten minutes and fifteen seconds into the encounter. Within twenty five seconds, Diva alerted at the driver side door; she alerted again at the rear

passenger door thirty seconds after the first alert. Fourteen minutes into the video, Capt. Dent had handcuffed Defendant and Mr. Broughton, and Defendant had been placed in the back of the patrol car. Capt. Dent began to search the car twenty seconds later, and after approximately a minute and a half, he located the shoebox containing cocaine. As stated above, less than 16 minutes elapsed between the time Capt. Dent began following the vehicle and the time the search concluded.

Based on these considerations, the Court has no difficulty finding that there were specific, articulable facts that gave rise to a reasonable suspicion of criminal activity, which justified the scope of the continued detention of Defendant following the traffic stop. Moreover, the Court finds that the duration of the stop was not unreasonable, as Capt. Dent diligently pursued his suspicion of criminal activity, and the entire encounter lasted less than 16 minutes. Therefore, the Court determines that Defendant was not unreasonably detained after Capt. Dent effected a stop of the vehicle.[6]

---

[6]The Court specifically notes the similarity between the facts presented in the instant case and those in United States v. Griffin, 109 F.3d 706 (11th Cir. 1997) (*per curiam*). In Griffin, the Eleventh Circuit concluded that the district court did not err in denying the defendant's motion to suppress because officers who detected a strong odor of marijuana during a traffic stop and received inconsistent responses from vehicle occupants regarding their destination had reasonable suspicion of criminal activity, which justified an investigatory detention. Id. at 708.

### III. CONCLUSION

In conclusion, the Court determines that the stop of the vehicle was supported by probable cause to believe that a traffic violation had occurred, and that Defendant was not detained unreasonably following the stop. Therefore, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

SO REPORTED and RECOMMENDED this 20th day of February, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE